IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE WASHINGTON GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> HARRY SPORIDIS, <br><br> Defendant. | Civil Action No. <br><br> 1:07-cv-1892(RBW) |

## ANSWER

Defendant Harry a. Sporidis files this Answer in response to the Complaint filed by Plaintiff The Washington Group ("TWG"), and responds as follows:

1. Denied. Admit that TWG seeks injunctive relief, and money damages, but deny that TWG is entitled to either.

2. Admit that the principal place of business of TWG is in Washington, D.C. Admit that TWG is a government relations and strategic consulting firm that serves a mix of clients. Lack information or knowledge sufficient to form a belief about the truth of the remainder of this paragraph.

3. Admit that TWG provides some of the services listed in the first sentence to certain of its clients. Deny that TWG spends significant resources developing all client relationships. Lack information or knowledge sufficient to form a belief about the truth of the remainder of the paragraph.

4. Admit that Mr. Sporidis is a resident of the state of Maryland. Admit that he was a Senior Vice President of TWG at the time he resigned his position there, and then

he ended his employment on October 12, 2007. Admit that he began working for Powell Goldstein LLP on October 22, 2007.

5. Denied.

6. This paragraph is a legal conclusion to which no factual answer is required. To the extent it may be deemed to require a response, it is denied.

7. Admit that Mr. Sporidis joined TWG on June 7, 2001 as a Vice President, and that he was promoted to Senior Vice President thereafter. Admit that he earned an annual pay of $230,000, excluding other benefits, as of October 12, 2007, and that he had earned cash bonuses of $40,000 in the last two years.

8. Admit that Mr. Sporidis developed strong working relationships with the American Society of Clinical Oncologists ("ASCO") and Mentor Corporation ("Mentor") and the Society of Human Resource Management ("SHRM")while working at TWG, and that he was virtually the only one at TWG who provided services to them. Deny the remainder of the paragraph.

9. Admit that Mr. Sporidis received bonuses and restricted stock while at TWG. Admit that he signed a Restricted Stock Agreement in 2002 and 2003. Deny the remainder of the paragraph.

10. Denied.

11. Denied.

12. Denied. To the extent that this paragraph purports to quote from a document, the document speaks for itself and thus requires no response from Mr. Sporidis. Deny that the paragraph quotes the entire document nor that it quotes all the relevant portions. To the extent that an answer is required, it is denied.

13. Denied.

14. Admit that Mr. Sporidis worked at TWG during 2005, and that he gave notice to Susan Molinari, TWG's Chairman and Chief Executive Officer on September 26, 2007 that he intended to leave TWG in October. Admit that he gave notice to Paul Lobo on September 27, 2007 that he intended to leave TWG in October. Lack information or knowledge sufficient to form a belief as to the truth of the remainder of the allegations of the paragraph.

15. Admit that Mr. Sporidis told Ms. Molinari and Mr. Lobo that he intended to continue his government relations and strategic consulting practice at a law firm. Ms. Molinari instructed Mr. Sporidis to instruct his clients to submit termination notices under their contracts with TWG and Mr. Lobo informed Mr. Sporidis that an e-mail notice would suffice. Following the directions of Ms. Molinari and Mr. Lobo, Mr. Sporidis requested that Mentor submit its termination notice, and Mentor did so. Deny the remainder of the paragraph.

16. Admit.

17. Admit that Mr. Sporidis followed the instructions of Ms. Molinari to instruct Mentor to give its 30-days termination notice to TWG. Admit that Mr. Sporidis informed representatives of ASCO and Mentor that he would begin working at Powell Goldstein on October 22, 2007. The balance of this paragraph is a legal conclusion to which no factual answer is required. To the extent it may be deemed to require a response, it is denied. The remainder of the paragraph is denied.

18. Admit that Mr. Maroni sent an e-mail dated September 7, 2007. Deny that this paragraph fully or accurately summarizes the e-mail, and deny the remainder of the paragraph.

19. Denied.

20. Admit that Ms. Molinari had arranged a meeting between SHRM and a United States Senator. Admit that Ms. Molinari stated that she would cancel the meeting after learning that SHRM intended to terminate its relationship with TWG. Admit that Mr. Sporidis urged Ms. Molinari to maintain the meeting as a means to attract the future business of SHRM. Deny that Mr. Sporidis had solicited SHRM to terminate its business with TWG and deny the remainder of the paragraph.

21. Admit.

22. Admit that Mr. Sporidis, acting on the instructions of Ms. Molinari and Mr. Lobo, e-mailed Mr. Levine on September 27, 2007, asking him to submit a termination notice to TWG on behalf of Mentor. Lack information sufficient to admit or deny the remainder of the paragraph.

23. Admit that this paragraph accurately quotes a portion of an e-mail that Mr. Sporidis sent to Deborah Kamin of ASCO on September 26, 2007, but deny that it accurately or fully describes the entire e-mail. Deny the remainder of the paragraph.

24. Admit that Mr. Sporidis e-mailed Shelagh Foster of ASCO on September 27, 2007, and asked her about the terms that ASCO would want in an agreement with Powell Goldstein, but deny that the paragraph fully or accurately describes the entire e-mail. Deny the remainder of the paragraph.

25. Admit that Mr. Sporidis e-mailed Cynthia Berry, a Powell Goldstein partner, on September 27, 2007. Although the paragraph purports to paraphrase certain e-mails, deny that the paragraph accurately or fully summarizes the e-mails. Lack information or knowledge sufficient to form a belief about the truth of the remainder of the paragraph, and it is therefore denied.

*26.* Admit that Mr. Sporidis e-mailed Mr. Levine on September 27, 2007, and that the e-mail discussed a request by ASPS. Admit that this paragraph describes a portion of the e-mail, but deny that it fully or accurately describes the e-mail in its entirety. Deny that Mr. Sporidis solicited ASPS to do business with Powell Goldstein. Deny the remainder of the paragraph.

27. Deny.

28. Admit that Mentor was a client of TWG, and had paid monthly retainers to TWG of $25,000 from November 14, 2006 through October 26, 2007. Deny the remainder of the paragraph.

29. Admit that ASCO had been a client of TWG since at least 2005, and admit that ASCO paid a monthly retainer of $20,000 to Ketchum from August 31, 2006 to September 1, 2007. Deny the remainder of the paragraph.

30. Lacks information or knowledge sufficient to form a belief about the truth of the allegations in the first two sentences of this paragraph, and they are therefore denied. Deny the remainder of the paragraph.

31. Denied

32. Denied.

33. This paragraph appears to be a legal conclusion to which no factual answer is required. To the extent it may be deemed to require a response, it is denied.

### Count One

34. Mr. Sporidis repeats and realleges his responses to the allegations in paragraphs one through 34 as though set forth fully here.

35. Denied.

36. Lack information or knowledge sufficient to form a belief about the truth of the allegation, and it is consequently denied.

37. Lack information or knowledge sufficient to form a belief about the truth of the allegation, and it is consequently denied.

38. Denied.

39. Denied. Deny that TWG has suffered any damage, deny that it has suffered any legally compensable injury, deny that TWG is entitled to injunctive relief, and deny that Mr. Sporidis breached any contract.

### Count Two

40. Mr. Sporidis repeats and realleges his responses to the allegations in paragraphs one through thirty-nine as though set forth fully here.

41. Mr. Sporidis was a Senior Vice President of TWG during 2007 until he left TWG on October 12, 2007. The balance of this paragraph is a legal conclusion to which no factual answer is required. To the extent it may be deemed to require a response, it is denied.

42. Denied.

43. Denied.

44. Denied. Deny that TWG has suffered any damage, deny that it has suffered any legally compensable injury, deny that TWG is entitled to injunctive relief, and deny that Mr. Sporidis breached any contract.

45. Denied.

### Count Three

46. Mr. Sporidis repeats and realleges his responses to the allegations in paragraphs one through forty-five as though set forth fully here.

47. Admit that Mr. Sporidis developed relationships with ASCO and Mentor while he was employed at TWG. Admit that those clients paid for services rendered to them, and that TWG received some portion of the payments from those clients. Deny the remainder of this paragraph.

48. Denied.

49. Denied.

50. Denied. Deny that TWG has suffered any damage, deny that it has suffered any legally compensable injury, deny that TWG is entitled to injunctive relief, and deny that Mr. Sporidis breached any contract.

In response to the unnumbered paragraph beginning "**WHEREFORE**, "Mr. Sporidis denies that TWG is entitled to any relief, including the relief it specifically requests. Any allegation that is not specifically admitted is denied.

7

## **Affirmative Defenses**

1. TWG's claims are barred by estoppel.

2. TWG's claims are barred by waiver.

3. TWG's claims are barred by unilateral mistake.

4. TWG's claims are barred by ratification.

5. TWG's claims are barred by failure to mitigate damages.

6. TWG's claims are barred by the doctrine of unclean hands.

## **JURY DEMAND**

Defendant requests a trial by jury in this matter.

Respectfully submitted,

/s/ *Alan D. Strasser*
Alan D. Strasser (Bar No. 967885)
Kathryn S. Zecca (Bar No. 457244)
ROBBINS, RUSSELL, ENGLERT,
ORSECK, UNTEREINER & SAUBER LLP
1801 K Street, NW
Suite 411
Washington, DC 20006
Phone: (202) 775-4500
Fax: (202) 775-4510